22-07579MB(JR)

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Arthur Laguna, being duly sworn, depose and state that:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since May 2016. I am a graduate of the Federal Law Enforcement Training Center (FLETC) and the ATF National Academy.  Prior to working for the ATF, I was a Patrol Agent with the United States Border Patrol since June 2008.  In addition to my law enforcement experience, I possess a bachelor's degree from the University of Utah.

2. I am currently assigned to the ATF Phoenix Field Division, Tucson I Field Office, Operation Southbound Firearms Trafficking Task Force.  In my assignment, I primarily focus on identifying, disrupting, and dismantling firearm trafficking organizations.

3. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States.  As a result of my training and experience, I am familiar with federal firearm and ammunition laws including 18 U.S.C. § 922(a)(6): False Statements in the Acquisition of Firearms.  I am also familiar with 18 U.S.C. § 554(a): Smuggling Goods from the United States, and 18 U.S.C. § 371: Conspiracy to Commit an Offense Against the United States.

4. I am familiar with investigations of unlawful exportation of items controlled by the U.S. Department of Commerce. I know that a license is required to export items in the U.S. Commerce Control List (CCL), such as firearms and related articles. Under chapter 58 of Title 50, the Export Administration Regulations (EAR) under the Export Control Reform Act of 2018 (ECRA) is charged with controlling export of articles covered under the CCL.

## PURPOSE OF AFFIDAVIT

5. This affidavit is submitted in support of an application for a search warrant permitting the search of, and seizure of evidence found within, the following:

    a. A black Cricket Alcatel cellular telephone, seized from Lazaro RIOS on February 2, 2022.

6. Search of said cellular telephone is for information regarding the unlawful acquisition, attempted acquisition, and/or possession of firearms by Lazaro RIOS and other co-

conspirators both known and unknown to me at this time, believed to be involved in the conspiracy to straw purchase firearms suspected of being trafficked to Mexico, as well as methods utilized to achieve such goals.  There is probable cause to believe that contained within the cellular telephone is data relating to sent and received telephone calls; data related to text messages including incoming and outgoing, forwarded, and draft text messages, with all attachments that accompany the respective text messages; data related to instant messenger and/or social networking applications; transportation arrangements, instructions, order lists, photographs and videos of firearms; voicemail messages; e-mails; and financial arrangements and other logistical aspects related to the purchase, sale, transfer, smuggling, possession, and/or illegal acquisition of firearms in violation of 18 U.S.C. §§ 922(a)(6), 554(a), and 371.

7. Based upon my training and experience in conducting criminal investigations of violations of federal firearms and ammunition laws, and discussion of the facts in this investigation with other agents and other persons involved in the investigation, I know that firearms and ammunition trafficking organizations, and individuals engaged in firearms trafficking, have developed a number of methods to insulate their illegal activities from law enforcement detection.  Several of these methods are common to major firearms and ammunition trafficking organizations to varying degrees of sophistication.

8. Based on my training and experience, I know that organizations and individuals involved in firearm and ammunition trafficking utilize "straw purchasers" to illegally purchase firearms and ammunition. A straw purchaser is someone who knowingly acquires firearms on behalf of the true purchaser, often in an effort to conceal the identity of the true purchaser or on behalf of an individual not able to legally acquire and possess firearms and ammunition.  Organizations and individuals involved in firearm and ammunition trafficking typically employ and finance numerous straw purchasers to acquire firearms and ammunition from different Federal Firearms Licensees (FFLs), commonly referred to as gun stores or gun shops.  Trafficking organizations and the individuals involved in such activity routinely rely on straw purchasers and their associates to traffic firearms and ammunition to Mexico.  Said straw purchasers typically dispose of the firearms within days or weeks after purchasing them. These firearm acquisition and disposition patterns are

typically different from those of legal firearm owners who purchase firearms and ammunition for target shooting, self-defense, collecting, and hunting purposes.

9. I also know that a vast number of firearms-trafficking organizations from Mexico purchase similar firearms and ammunition that are commonly referred to as "weapons of choice." These weapons of choice include semi-automatic and automatic military type rifles such as AK-type (7.62x39mm caliber ammunition) and AR15-type (.223 or 5.56 NATO caliber ammunition). Weapons of choice also include heavy, large caliber firearms, particularly .50 caliber rifles and belt-fed firearms in multiple calibers including, .50, 7.62x39mm, and 5.56/.223 calibers.

10. I also know through training and experience that an additional key indicator of illegal firearms trafficking activity is utilization of cash to conduct such purchases. Most commonly, the actual purchasers or their associates will furnish the straw purchasers with the funds for these purchases in cash because the straw purchasers often do not have the funds themselves to purchase the firearms upfront. Most commonly, the coordination of this illegal activity is coordinated through the use of a cellular telephone.

11. I know through training and experience that illegal firearm and ammunition traffickers often utilize cellular telephones to communicate with other co-conspirators and FFLs. These cellular telephones are often held in the name of other living or fictitious persons, and the users change numbers frequently in order to limit law enforcement officials' ability to identify and track suspects' call histories.

12. I have learned that individuals who engage in the illegal acquisition and disposition of firearms, or firearms trafficking, typically communicate utilizing multiple cellular telephones via calls, emails, text messaging, and other messaging applications (apps) as well as various social media platforms. Furthermore, these individuals often document their activity with photographs or videotapes of themselves, their associates, their property, and their merchandise through the use of cellular telephones.

13. I know that illegal firearm and ammunition traffickers often utilize cellular telephones and other electronic storage devices to research the price and availability of firearms and ammunition, and to acquire, pay for, and keep records of firearms and ammunition purchases. Firearms and ammunition trafficking organizations also utilize code words for

quantities and types of firearms and ammunition that are being purchased, sold, and/or transferred in effort to avoid detection by law enforcement officials.

14. I know that illegal firearm and ammunition traffickers often utilize cellular telephones to store contact information of co-conspirators. I know that this information can then be shared with co-conspirators to assist in the flow of communication amongst the group.

15. I know that illegal firearm and ammunition traffickers often utilize cellular telephones to share photographs of firearms and ammunition that they want to purchase with co-conspirators. This is common when someone in the organization is utilizing a co-conspirator to purchase firearms or ammunition on his or her behalf.

16. I know that electronic devices, such as cellular telephones, computers, and other electronic storage media can store information for long periods of time. I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.

17. Additionally, I know that most cellular telephones have the capability to access the internet and therefore can be used by individuals to access their email accounts and communicate on social media accounts such as Facebook.com, WhatsApp, etc.

18. This Affidavit is based upon my personal knowledge, education, training and experience, a review of records and laws relating to this investigation, and discussions of the facts of this case with other agents and other persons involved in the investigation. This Affidavit is offered solely for the purpose of establishing probable cause to search for and seize evidence, particularly described in Attachment B hereto, from the aforementioned cellular phone seized from Lazaro RIOS on February 2, 2022, particularly described in Attachment A hereto, and does not set forth all the facts of this investigation.

## HISTORY OF INVESTIGATION

19. On February 1, 2022, I learned of a potential straw purchase of an AK-type rife. I contacted Liberty Pawn Shop, the Tucson-based FFL from which the rifle was purchased, and learned the purchaser had not yet acquired the firearm and would return on a later date to acquire it. I obtained a copy of the Firearm Transaction Record - ATF Form 4473, and learned the

purchaser, Sarah Desiree RIOS-Martin, was in the process of acquiring a Century Arms model VSKA 7.62x39mm rifle with serial number SV7092224 for $910.00 cash. Firearms of this caliber and design are considered weapons of choice by ATF for firearms trafficking organizations from Mexico. Liberty Pawn Shop advised that RIOS-Martin had already acquired two other AK-type rifles during January of 2022 and provided me with the corresponding Forms 4473 documenting these purchases.

20. The Firearm Transaction Record - Form 4473 is the paperwork that precedes the criminal background check of a firearm purchaser and is required to be completed and kept in the FFL's records for every purchase of a firearm from an FFL. The Form 4473 collects detailed biographical information of the potential firearm purchaser and requires responses to numerous qualitative questions for firearm prohibition categories, including whether someone is the actual purchaser of a firearm. An incorrect response to these questions would prohibit someone from acquiring a firearm and forbid the FFL from transferring it.

21. A review of the Forms 4473 revealed the following:

   a. On January 8, 2022, Liberty Pawn Shop transferred a Century Arms model VSKA 7.62x39mm (AK-type) rifle with serial number SV7084873 to Sarah RIOS-Martin. The receipt revealed that RIOS-Martin paid $1,110.99 cash for the purchase of the rifle. In furtherance of this transaction, RIOS-Martin listed her current residence address in the Form 4473s as 726 East 37th Street, Tucson, AZ 85713. RIOS-Martin also checked "Yes" to question 21a on ATF Form 4473, indicating that she was the actual transferee/buyer of the firearm.

   b. On January 29, 2022, Liberty Pawn Shop transferred a Century Arms model VSKA 7.62x39mm (AK-type) rifle with serial number SV7106589 to Sarah RIOS-Martin. The receipt revealed that RIOS-Martin paid $1,055.44 cash for the purchase of the rifle. In furtherance of this transaction, RIOS-Martin listed her current residence address in the Form 4473 as 726 East 37th Street, Tucson, AZ 85713. RIOS-Martin also checked "Yes" to question 21a on ATF Form 4473, indicating that she was the actual transferee/buyer of the firearm.

   c. On February 2, 2022, Liberty Pawn Shop transferred a Century Arms model VSKA 7.62x39 mm (AK-type) rifle with serial number SV7092224 to Sarah RIOS-Martin. The receipt revealed RIOS-Martin paid $910.00 cash for the purchase of the rifle. In furtherance of this transaction, RIOS-Martin listed her current residence address in the Form 4473 as 726 East 37th Street, Tucson, AZ 85713. RIOS-Martin also

checked "Yes" to question 21a on ATF Form 4473, indicating that she was the actual transferee/buyer of the firearm.

22. Liberty Pawn Shop also advised that on January 29, 2022, Paul Michael STANLEY accompanied RIOS-Martin to the store during her firearm purchase. Liberty Pawn Shop also advised that STANLEY recently acquired an AK-type rifle on January 13, 2022. Furthermore, Liberty Pawn Shop identified Ydillia DUARTE as an associate of RIOS-Martin; specifically, RIOS-Martin had accompanied DUARTE to the store during an attempted AK-type firearm acquisition on January 29, 2022. Liberty Pawn Shop provided the associated Forms 4473, and a review of these forms revealed the following:

   a. On January 8, 2022, Paul Michael STANLEY attempted to acquire a Zastava Arms model ZPZPM70 7.62x39mm (AK-type) rifle with serial number Z70107892 from Liberty Pawn Shop. In furtherance of this transaction, STANLEY listed his current residence address in the Form 4473 as 3623 North Laconia Drive, Litchfield Park, AZ 85340. STANLEY also checked "Yes" to question 21a indicating that he was the actual transferee/buyer of the firearm.

      i. As part of the transaction, Liberty Pawn Shop received a delayed notification for STANLEY's criminal background check through National Instant Criminal Background Check System (NICS). As a result, the firearm could not be transferred to STANLEY pending the receipt of a follow-up Proceed response from NICS or the expiration of three business days (exclusive of the day the background check was conducted), whichever occurs first. A delayed response from NICS is different from a Denied response, which indicates that the prospective firearm buyer has a state or federal firearm prohibition, such as a felony conviction. Due to the delayed response, as required by law governing the sale of firearms, Liberty Pawn Shop did not transfer the firearm to STANLEY.

      ii. According to the Form 4473, NICS did not provide a response to Liberty Pawn Shop, thus enabling Liberty Pawn Shop to transfer the firearm after the expiration of three business days. On January 13, 2022, Liberty Pawn Shop transferred the rifle to STANLEY after he again signed the certification box of the Form 4473. The receipt revealed that STANLEY paid $1,222.10 cash for the purchase of the rifle.

   d. On January 29, 2022, Ydillia DUARTE attempted to acquire a Century Arms model VSKA 7.62x39mm (AK-type) rifle with serial number SV7092224 from Liberty Pawn Shop. In furtherance of this transaction, DUARTE listed her current residence address in the Form 4473 as 3626 East Helena Stra., Tucson, AZ

85706. DUARTE also checked "Yes" to question 21a indicating that she was the actual transferee/buyer of the firearm.

    i. As part of the transaction, Liberty Pawn Shop received a delayed notification for DUARTE's criminal background check through NICS. Due to the delayed response, as required by law governing the sale of firearms, the FFL did not transfer the firearm to DUARTE on this date.

    ii. According to the Form 4473, NICS did not provide a response to Liberty Pawn Shop, thus enabling Liberty Pawn Shop to transfer the firearm after the expiration of three business days. However, DUARTE never returned to acquire the firearm.

    iii. This firearm was ultimately transferred to RIOS-Martin on February 2, 2022 (as discussed above in paragraph 22c).

23. I requested the Arizona Department of Economic Security (DES) reported wage information for RIOS-Martin, STANLEY, and DUARTE. A review of RIOS-Martin's reported wages revealed earnings of approximately $400 during 2021. According to DES, STANLEY had no reported wages. A review of DUARTE's reported wages revealed earnings of approximately $3,300 during 2021.

24. On February 2, 2022, agents conducting surveillance observed RIOS-Martin and STANLEY arrive at Liberty Pawn Shop as passengers in a tan Hummer H2 registered to Lazaro RIOS, uncle of RIOS-Martin. After RIOS-Martin's acquisition of the rifle from Liberty Pawn Shop, agents observed RIOS-Martin and STANLEY enter the vehicle with the rifle. Agents surveilled the vehicle through Tucson until it pulled up to 626 West Hatfield Street in Tucson, Arizona, where agents conducted a vehicle stop. Agents stopped the vehicle believing the recently acquired firearm was a straw purchase and destined for Mexico based on the repetitive cash purchases of numerous similar firearms considered weapons of choice by numerous straw purchasers, and the lack of reported wages to support the acquisitions.

25. During the vehicle stop, agents interviewed the three occupants. RIOS-Martin stated she had not lived at the address listed on her Arizona Identification Card for approximately six years and therefore provided the Liberty Pawn Shop false information when she listed that address as her current residence on the Form 4473 for the purchase of the rifle. Regarding

the funds for the purchase of the firearm, RIOS-Martin stated she used her stimulus and tax return money to purchase the firearm because she had been unemployed for the last six months. RIOS-Martin stated the firearm was for her self-defense, but also stated she was not able to afford the ammunition and did now know what type of ammunition the firearm required. RIOS-Martin stated the two other AK-type firearms she had recently purchased were recently stolen along with the firearm STANLEY had purchased. RIOS-Martin stated she does not have a cellular telephone and used her boyfriend STANLEY's phone to call RIOS for a ride to Liberty Pawn Shop.

26. RIOS stated in his interview that he transported RIOS-Martin to Liberty Pawn Shop on multiple occasions. RIOS also stated that he used his cellular telephone to communicate with RIOS-Martin to arrange said transportation.

27. At the conclusion of the interviews, ATF seized the aforementioned firearm from RIOS-Martin and the cellular telephones belonging to STANLEY and RIOS. The cellular telephones were placed in airplane mode to isolate them from the network in order to prevent the devices from being altered remotely, thus preserving the data in the devices. The firearm and cellular telephones were transported to the Tucson ATF Field Office and secured in the evidence vault.

28. On July 15, 2022, agents interviewed DUARTE regarding her suspected attempted straw purchase of a firearm. DUARTE stated that RIOS asked her to purchase a firearm for his sister and provided her the funds to do so. According to DUARTE, RIOS also instructed her on which firearm to purchase. RIOS agreed to pay DUARTE $200 for the straw purchase. DUARTE recalled overhearing conversation about RIOS-Martin and STANLEY also straw purchasing firearms for RIOS. DUARTE stated she and RIOS communicated in person and via cellular telephone regarding the agreement to straw purchase the firearm. DUARTE could not recall specific text conversations about this illicit activity but stated it was possible such communication exists on her and RIOS' phones.

29. As RIOS is allegedly the coordinator of these straw purchases, I am seeking to search solely his cellular telephone. As the coordinator of the straw purchasers, RIOS' cellular telephone is suspected to contain the communications between him and other co-conspirators, including STANLEY, DUARTE, and RIOS-Martin, and including such communications

also contained on STANLEY's phone and the information DUARTE mentioned in her interview.

30. Based on RIOS' crossing history, it does not appear that he is physically transporting the firearms to Mexico. Thus, it is believed he is coordinating with other co-conspirators to straw purchase and export these firearms, most likely through his cellular telephone.

31. A review of Firearms Trace Summary reports revealed the AK-type rifle purchased by RIOS-Martin on January 8, 2022, and the AK-type rifle purchased by STANLEY on January 13, 2022, were recovered in Navojoa, Sonora, Mexico on or about March 1, 2022. A Firearms Trace Summary is the report of the systematic tracking of the movement of a firearm recovered by law enforcement officials, beginning with its importation into or manufacture in the United States through the distribution chain of FFLs to the point of its first retail sale.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. As described above and in Attachment B, this application seeks permission to search for records and/or information contained within RIOS' cellular telephone, in whatever form they are found. Thus, the warrant applied for would authorize the seizure and search of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

33. Although some of the records called for by this warrant might be found in the form of user-generated documents (such as pictures and movie files), electronic storage media can contain other forms of electronic evidence as well:

   a. Forensic evidence on a cellular telephone or any attached electronic storage media can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, electronically-stored photographs, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the cellular telephone at a relevant time.

   b. A person with appropriate familiarity with how a cellular telephone or any attached electronic storage media works can, after examining this forensic evidence in its

proper context, draw conclusions about how the devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance with particularity a description of the records to be sought, evidence of this type often is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone or any attached electronic storage media is evidence may depend on other information stored on the electronic device and the application of knowledge about how that device behaves. Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

34. I know that when an individual uses an electronic device to communicate with co-conspirators, the individual's device may serve both as an instrumentality for committing the crime and as a storage medium for evidence of the crime. The device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used, data that was sent or received, notes as to how the criminal conduct was achieved, records of internet discussions about the crime, and other records that indicate the nature of the offense.

## SEARCH METHODOLOGY TO BE EMPLOYED

35. The search methodology to be employed as to cellular telephones and any attached electronic storage media is as follows:

a. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the items to human inspection in order to determine whether it is evidence described by the warrant. It is anticipated that mirror copies or images of such

evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b. Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the electronic devices, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c. Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence in this affidavit and its attachments.

d. Because it is expected that the cellular telephone and any form of electronic storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of this case. However, if after careful inspection, investigators determine such computer, cellular telephone and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband or (4) evidence otherwise unlawfully possessed or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

e. Due to cellular telephone capabilities of encryption and password protection, the device may be shipped to the ATF Digital Forensics Branch in Sterling, Virginia or other law enforcement partners' facilities for advanced extraction services.

**RETURN AND REVIEW PROCEDURES**

36. Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, I understand and will act in accordance with the following:

    a. Pursuant to Rule 41(e)(2)(A)(i), an agent is required to file with the court an inventory return, that is, an itemized list of the property seized.

    b. Pursuant to Rule 41(e)(2)(B) and Rule 41(e)(2)(A) governs the time within which the electronically stored information must be seized or copied on-site after the issuance of the warrant. The Rules do not prohibit the later review of the media or information seized, or the later off-site digital copying of the media.

    c. Under Rule 41 (f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the physical storage media that was seized or copied, not an itemization of the information or data stored on the physical storage media. Under Rule 41(f)(1)(B), I may retain a copy of that information for purposes of the investigation. The government intends to make and retain a full image copy of the seized media, so that a copy of the evidence rather than the original evidence can be examined. The government will seize and retain both the original evidence and any copies of this evidence. This procedure will ensure that the original evidence remains intact and that potential evidence and instrumentalities of offenses will not be returned to the subject.

## CONCLUSION

37. Based on my training, experience, and the aforementioned facts, which I believe to be true, I believe probable cause exists that the above-described evidence or a portion thereof will be found within RIOS' cellular telephone when the warrant is served and that such records and/or information would constitute evidence of Smuggling Goods from the United States and Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. §§ 554(a) and 371; and Making False Statements in Connection with the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6). With the above information, I formally request the issuance of the search warrant for the aforementioned cellular telephone seized from Lazaro RIOS on February 2, 2022.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

_____
Special Agent Arthur Laguna

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Sworn to me telephonically in Tucson, Arizona, on August ___17th___, 2022.

_____
Honorable Jacqueline Rateau
United States Magistrate Judge